IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOUGLAS WALTER &              :    CIVIL ACTION
KATHLEEN PAONE,              :    NO. 06-378
                             :
        Plaintiffs,          :
                             :
        v.                   :
                             :
PALISADES COLLECTION, LLC,    :
et al.,                      :
                             :
        Defendants.          :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              January 26, 2010

        Plaintiffs Douglas C. Walter and Kathleen Paone[1]

(collectively, "Plaintiffs"), bring this action on behalf of

themselves and others similarly situated against Defendants Mann

Bracken, LLP (as successor in interest to Wolpoff & Abramson,

LLP) ("Mann Bracken") and Palisades Collection, LLC ("Palisades,"

and together with Mann Bracken, "Defendants").  Plaintiffs allege

that Defendants violated the Fair Debt Collection Practices Act

(the "FDCPA") by indiscriminately and without legal basis adding

non-liable spouses to collection lawsuits.  Currently before the

---

[1]     On September 23, 2009, Plaintiffs' counsel filed a
"statement noting the death" of Kathleen Paone pursuant to Fed.
R. Civ. P. 25.  Pursuant to Rule 25(a)(1), a motion for
substitution must be filed within 90 days of September 23, 2009.
As the deadline to file such a motion has passed, it is
appropriate to dismiss all claims asserted on behalf of Kathleen
Paone.  As a procedural matter, however, this issue is not
presently before the Court.  Therefore, for purposes of this
Memorandum only, the Court will address Kathleen Paone as a
putative class representative on the ground that doing so will
not impact the Court's decision to deny class certification.

Court is Plaintiffs' motion for certification of a national class.  For the reasons that follow, the Court will deny the motion for class certification on the ground that Plaintiffs' counsel has not satisfied Rule 23(a)(4) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND

### A.   Facts

Palisades is in the business of purchasing defaulted debt from creditors.  Palisades would refer certain of the defaulted debt accounts to Mann Bracken for collection purposes, and specifically to institute collection lawsuits on behalf of Palisades.  In referring a case to Mann Bracken, Palisades would forward a collection file which generally included basic account information on the defaulted debt, such as the assigned date from the original creditor, the assigned amount calculated by the original creditor, the last payment recorded by the original creditor, the date of delinquency, the debtor's name, address, phone number, and social security number.  (See Joann Bergmann Dep. Tr. 55:21-56:7, June 28, 2007.)

In pursuit of collecting a debt, on December 27, 2005, Mann Bracken filed a lawsuit on behalf of Palisades against Jill Walter ("Mrs. Walter") and Douglas Walter ("Mr. Walter") in the Pennsylvania Court of Common Pleas of Bucks County, Pennsylvania (the "Walter Complaint"), seeking judgment against both Mr. and

Mrs. Walter in the amount of $6,467.40, plus costs. (Pls.' Mot. for Class Certification Ex. 3.) At the time, Mrs. Walter maintained a credit card account with Providian National Bank Visa (the "Walter Account"), of which Mr. Walter was an authorized user. (Douglas Walter Dep. Tr. 56:11-59:14, Aug. 8, 2007.) Although Mr. Walter was an authorized user and was issued a credit card with his name on it, he never used the Walter Account credit card for any purchases. (Id. at 57:15-17.) The monthly statements on the Walter Account were in both Mr. Walter and Mrs. Walter's names, and payments on the Walter Account were made from the joint account of Mr. and Mrs. Walter. (Id. at 54:5-57:14.)

The Walter Complaint alleged in relevant part:

4. It is averred that Defendant(s) was/were issued an open end credit card account.

5. At all relevant times material hereto, Defendant(s) have/has used said credit card for the purchase of products, goods, and/or obtaining services.

6. Plaintiff provided Defendant(s) with copies of the Statement of Accounts showing all debits and credits for transactions on the aforementioned credit card account to which there was no bona fide objection by Defendant(s).

(Pls.' Am. Compl. Ex. 3.) While the Walter Complaint was pending, Mr. Walter sought to refinance the mortgage on his residence. (Pls.' Mot. for Class Certification 7.) The mortgage refinancing company required Mr. Walter to satisfy the $6,467.40

- 3 -

debt alleged in the Walter Complaint in order to consummate his mortgage refinancing. (Id.)

On August 5, 2005, Mann Bracken, on behalf of its client Great Seneca, filed a lawsuit against Joseph Paone ("Mr. Paone") and Kathleen Paone ("Mrs. Paone") before a Magisterial District Judge in Montgomery County, Pennsylvania (the "Paone Complaint") requesting a judgment in the amount of $2,044.30, plus attorney's fees and costs. (See Pls.' Am. Compl. Ex. 4.) Mr. Paone was issued a credit card by Household Bank (the "Paone Account"). (See Kathleen Paone Dep. Tr. 31:13-32:19, Aug. 8, 2007.) Mrs. Paone was not an authorized user on the Paone Account, never made any purchases with the Paone Account credit card, did not make any payments on the Paone Account, and was not even aware that the Paone Account existed until her husband disclosed its existence in order to have the debt discharged in bankruptcy. (Id. at 53:3-15.)

The Paone Complaint stated as follows:

> Plaintiff's assignor issued a revolving credit account to Defendant which was subject to terms and conditions as outlined and agreed upon by Defendant. Which included, but were not limited to, interest, reasonable attorney's fees and all court collection costs in the event of default of payment. Defendant utilized said revolving credit account to obtain extensions of credit which Defendant used for the purchase of products, goods, and/or for obtaining services from Plaintiff assignor and subsequently incurred a delinquent balance due and owing in the amount of $2,044.30.

(Pls.' Am. Compl. Ex. 4.)

In each of these two cases, it was Plaintiffs' respective spouses who actually incurred the credit card debt at issue in each collection action. In response to these collection lawsuits, Plaintiffs commenced the instant class action on the ground that Defendants' attempt to collect a debt from a non-liable spouse constitutes an unfair debt collection practice in violation of the FDCPA.

B. <u>Procedural History</u>

On January 27, 2006, Plaintiffs filed a complaint against multiple defendants,[2] including Mann Bracken and Palisades. Plaintiffs subsequently amended this complaint and asserted three causes of action against Defendants: (1) a violation of the FDCPA, 15 U.S.C. § 1692 et seq.; (2) a RICO claim pursuant to 18 U.S.C. § 1961;[3] and (3) a violation of the Pennsylvania Unfair and Deceptive Trade Practices statute, 73 Pa. C.S. § 201-1 and 73 Pa. C.S. § 2270.4-5.[4] The parties were

---

[2] The additional defendants were as follows: Washington Mutual Credit Card Services; Great Seneca Financial Corp.; Household Bank HSBC Bank, USA; Wolpoff & Abramson, LLP; Amy F. Doyle; Daniel F. Wolfson; Phillip C. Warholic; Andrew C. Spears; David R. Galloway; Tonilyn M. Chippie; Bruce H. Cherkis; Ronald S. Canter; Ronald M. Abramson; and Donald P. Shiffer. These defendants were dismissed at various points in these proceedings.

[3] On March 29, 2007, the Court entered an Order (doc. no. 56) dismissing Plaintiffs' RICO claim in its entirety.

[4] Plaintiffs also asserted a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681, against Washington Mutual Credit

permitted to conduct fact discovery with respect to class

certification for a period of almost three years.  On June 24,

2009, Plaintiffs filed the instant motion seeking class

certification of a class defined as follows:

> All consumers in the United States of America,
> who, from January 27, 2005, to the present, were
> or are spouses who were not signatories to and not
> liable for credit card obligations for which their
> spouses were legally and contractually liable, and
> who had been added as co-defendants with their
> liable spouses in collection law suits filed by or
> on behalf of the captioned defendants.

(Pls.' Proposed Order ¶ 1.)[5]  On September 14, 2009, the Court

held a hearing on the instant motion for class certification.

---

Card Services only.

    [5]   Plaintiffs define the proposed class differently in the
motion for class certification than in the order, the motion
defines the class as follows:

> All consumers in the United States of America,
> who, from January 27, 2005, to the present,
> were or are spouses who were not signatories
> and not contractually liable on credit card
> obligations for which their spouses were
> contractually liable, and who, throughout the
> stated time frame, have been and/or are engaged
> in litigation, including, but not limited to,
> the continuing attempt to collect on the said
> debt, as co-defendants in collection law suits
> filed by or on behalf of the captioned
> defendants.

(Pls.' Mot. for Class Certification 1.)  The differences between
these proposed definitions are not germane to the Court's
decision.

## II.  ANALYSIS

Plaintiffs argue that class certification is proper because (1) there are at least hundreds of non-liable spouses added as co-defendants; (2) there are common issues of whether the addition of a non-liable spouse constitutes a violation of the FDCPA; (3) Plaintiffs' cases are typical of the class because each was a spouse who was not liable on the respective credit card debt but was included as a co-defendant; (4) the class will be adequately represented because Plaintiffs' interests are aligned with those of the class and Plaintiffs' counsel possesses satisfactory experience and qualifications to litigate on behalf of this class; and (5) common issues predominate thereby making a class action the most efficient method of resolution.[6]

Defendants respond that class status is inappropriate in this case because Plaintiffs have not produced sufficient evidence that there was a common practice of adding a non-liable spouse as a co-defendant merely based on spousal status.  The thrust of Defendants' argument is that because an individualized determination was made before adding any co-defendant spouse to a collection lawsuit, then no common action was taken with respect

---

[6]     Plaintiffs fail to present any argument as to whether their claim under the Pennsylvania Unfair and Deceptive Trade Practices statute should be included in the proposed class action.  Therefore, the issue of whether this claim should be included in the putative class action is not addressed in this Memorandum.

to the putative class members.  Defendants contend that an independent basis was relied upon for adding a co-defendant spouse, such as guarantee, fraud, discharge in bankruptcy, or the "necessaries doctrine."[7]  Defendants further assert that counsel for Plaintiffs is not qualified to represent the proposed class.

A.   Applicable Law

1.   Fair Debt Collection Practices Act.

The FDCPA was enacted by Congress in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a).  The FDCPA is a remedial statute, therefore, courts are instructed to construe its language broadly in order to effectuate its remedial purpose.  Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (internal citations omitted).

---

[7]     The "necessaries doctrine" is a common law doctrine that provides that a spouse who is not contractually liable on a debt can become liable if the debt is incurred for the benefit of both spouses and is fundamental to the maintenance of the family. By way of example, the Pennsylvania statute codifying the "necessaries doctrine" provides:

> In all cases where debts are contracted for necessaries by either spouse for the support and maintenance of the family, it shall be lawful for the creditor in this case to institute suit against the husband and wife for the price of such necessaries and, after obtaining a judgment, have an execution against the spouse contracting the debt alone; and, if no property of that spouse is found, execution may be levied upon and satisfied out of the separate property of the other spouse.

23 Pa. C.S. § 4102.

The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, section 1692f prohibits the "use of unfair or unconscionable means to collect or attempt to collect any debt," and explicitly outlaws the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. § 1692(f). The filing of a collection action against a non-liable spouse can qualify as a violation of the FDCPA. See Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 803 (S.D. Ohio 2006) (holding that the practice of filing collection suits against spouses who were not jointly liable constitutes a violation of 15 U.S.C. § 1692(e)(2)).

The FDCPA expressly provides for class actions. 15 U.S.C. § 1692k(a)(2)(B). The statute also sets a $1,000 damages cap on individual claims and limits the amount of damages recoverable in a class action to the "lesser of $500,000 or 1 per centum of the net worth of the debt collector." Id. § 1692k(a)(2)(A),(B).

2.   Class Action Certification Requirements.

Rule 23(a) and (b) provide a structured analysis that is "designed to insure that a proposed class has 'sufficient

unity so that absent class members can fairly be bound by decisions of class representatives.'" <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 309 (3d Cir. 1998) (quoting <u>Amchem. Prods., Inc. v. Windsor</u>, 521 U.S. 591, 621 (1997)); <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 782 (3d Cir. 1995) (emphasizing that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiff's and counsel's ability to fairly and adequately protect class interests"). The proponent of class certification bears the burden of demonstrating that all requirements of Rule 23(a) are satisfied and at least one of the conditions enumerated in Rule 23(b) is met. <u>Chiang v. Veneman</u>, 385 F.3d 256, 264 (3d Cir. 2004). Thus, plaintiff must first satisfy Rule 23(a) by showing:

> (1) the class is so numerous that joinder is impracticable;
>
> (2) there are question of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If the threshold requirements of 23(a) are satisfied, plaintiff must then show that the action is maintainable by demonstrating that one of the requirements of 23(b) is met. Here, Plaintiffs seek certification under 23(b)(3), which provides for certification when

> the court finds that the questions of law
> or fact common to the members of the class
> predominate over any questions affecting
> only individual members, and that a class
> action is superior to other available
> methods for the fair and efficient
> adjudication of the controversy.

Id. 23(b)(3).[8] Furthermore, Rule 23(g) mandates that plaintiff's counsel be appointed in conjunction with class certification. Id. 23(g).

"It is well established that '[a] class may be certified only if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 595-96 (3d Cir. 2009) (quoting Beck v. Maximus, 457 F.3d 291, 297 (3d Cir. 2006) (internal quotation marks and

---

[8]     Rule 23(b)(3) lists the following four factors pertinent to the determination of whether these "predominance" and "superiority" requirements are met: (1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Id.

citation omitted).  In conducting this rigorous analysis the Third Circuit has "instructed district courts, where appropriate, to 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'"  In re Constar Int'l, Inc. Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 (3d Cir. 2008)); see also Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 189 (3d Cir. 2001) (district court properly "examine[d] the factual record underlying plaintiffs' allegations in making its certification decision").  Since the obligatory rigorous analysis encompasses a thorough examination of the factual and legal allegations, a court may conduct a "preliminary inquiry into the merits," and "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take."  Hydrogen Peroxide, 552 F.3d at 317 (internal quotation marks and citations omitted).

"Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence.  In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23."  Id. at 320 (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)).  In order to certify a class pursuant to Rule 23, a court is required to delineate "the

precise parameters defining the class and a complete list of the class, issues, or defenses to be treated on a class basis." Wachtell v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 185 (3d Cir. 2006).

B.   Discussion

   1.   Compliance with Rule 23(a).[9]

      a.   Numerosity

Rule 23(a)(1) requires a plaintiff to demonstrate that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This numerosity prerequisite does not require a specific minimum number of plaintiffs, but only an amount sufficient to establish the impracticability of joinder. In evaluating the numerosity requirement, "a court may accept common sense assumptions." In re Linerboard Antitrust Litig., 203 F.R.D. 197, 205 (E.D. Pa. 2001) (internal citation omitted). The Third Circuit has held that if the putative class consists of more than forty potential members, the first prong of Rule 23(a) is satisfied. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, Plaintiffs contend that the numerosity requirement is established based upon their good faith allegation

_____

[9]   As the Court concludes that the proposed class does not satisfy Rule 23(a)(4), and therefore cannot be certified, this Memorandum will address the remaining requirements under Rule 23(a) summarily for purposes of efficiency.

that the putative class consists of at least 100 members in Pennsylvania. (Pls.' Mot. for Class Certification 3; Id. Ex. B.) Plaintiffs base this assertion, in part, on a list provided by Defendants of 2,298 cases pending in Pennsylvania in which a second defendant was added in a collection suit (the "Pennsylvania Cases").[10]

Plaintiffs estimate the class members to be at least in the hundreds, and potentially in the thousands, based on the volume of the Pennsylvania Cases. Certification does not require a minimum number of plaintiffs, and a court is permitted to accept "common sense assumptions" regarding numerosity. Alberton v. Commw. Land Title Ins. Co., 247 F.R.D. 469, 476 (E.D. Pa. 2008), rev'd on other grounds, Hunt v. U.S. Tobacco Co., 538 F.3d 217 (3d Cir. 2008) (quoting Linerboard, 203 F.R.D. at 205). Even if only two percent of the Pennsylvania Cases fit within the proposed class, numerosity would be satisfied. See id. at 476

---

[10] Defendants claim that Palisades is not identified as a claimant represented by Mann Bracken in any of the Pennsylvania Cases, and therefore a class action cannot properly be certified against Palisades. Defendants assert that the entity "Palisades XVI" which is identified as a represented claimant in numerous Pennsylvania Cases is not the same legal entity as Defendant Palisades. First, it is not contested that Palisades was the claimant in the Walter Complaint, which indicates at least some potential involvement in the Pennsylvania Cases. Second, Palisades retains the right to file a motion to dismiss itself from the action if it can establish definitively that it was not a claimant in any of the Pennsylvania Cases.

(concluding that even if only a small percentage of potentially thousands of class members qualify for class status then the numerosity requirement would be satisfied); <u>Richberg v. Palisades Collection LLC</u>, 247 F.R.D. 457, 462 (E.D. Pa. 2008) (relying on plaintiffs' allegation that 3,000 potential class members exist to find that numerosity was satisfied). Therefore, accepting Plaintiffs' allegations as accurate, the numerosity requirement is met.

    b.    Commonality

        The threshold for establishing Rule 23(a)'s commonality requirement is low. <u>Chiang</u>, 285 F.3d at 265; <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 182 (3d Cir. 2001). Although the issue of commonality is subsumed by the predominance requirement where a plaintiff seeks class certification under Rule 23(b)(3), the Court will address the commonality prong briefly for purposes of completeness. <u>See Danvers Motor Co., Inc. v. Ford Motor Co.</u>, 543 F.3d 141, 148 (3d Cir. 2008) (noting that the commonality analysis is subsumed by the predominance inquiry because the standard under Rule 23(b)(3) is "far more demanding than the Rule 23(a)(2) commonality requirement") (internal quotation marks and citation omitted). It is well-established in the Third Circuit that commonality does not require all claims and facts among class members be identical, rather a single common issue of law or fact shared by

the named plaintiffs and the prospective class will suffice. Chiang, 385 F.3d at 265; Johnston, 265 F.3d at 184; Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.") (internal citation omitted).

Whether a form of standardized conduct engaged in by the defendant is unlawful under the FDCPA can satisfy the commonality requirement pursuant to Rule 23(a). See Richburg, 247 F.R.D. at 462 (holding that allegations that defendant violated the FDCPA by filing collection lawsuits after the statute of limitations had run satisfied the commonality requirement); McCall v. Drive Fin. Servs., LP, 236 F.R.D. 246, 250 (E.D. Pa. 2006) (finding that the commonality requirement was established where class members received substantially identical form collection letters in violation of the FDCPA).

Plaintiffs allege that Defendants engaged in a standardized form of conduct by adding a spousal co-defendant merely because of spousal status, which if established, could qualify as a violation of the FDCPA. An additional issue of common fact raised by Plaintiffs is whether Defendants provided the appropriate thirty-day validation notice to each of the spousal co-defendants in accordance with 15 U.S.C. § 1692g. These common questions are sufficient to satisfy the relatively

low commonality threshold under Rule 23(a)(2).

   c.   Typicality

   "To evaluate typicality, [a court must] ask whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are alleged with those of the class. [F]actual differences will not render a claim atypical if the claim arises from the same event or given practice or course of conduct that gives rise to the claim of the class members, and if it is based on the same legal theory." Beck v. Maximus, Inc., 457 F.3d 291, 295-96 (3d Cir. 2006) (internal citations omitted). "When a defendant engaged in a 'common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members.'" Cohen v. Chicago Title Ins. Co., 242 F.R.D. 295, 299 (E.D. Pa. 2007) (quoting Linerboard, 203 F.R.D. at 207); see also, Baby Neal, 43 F.3d at 58 ("[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories.").

   Here, Plaintiffs allege that Defendants engaged in an identical practice with respect to all potential class members, namely adding a non-liable spouse as a co-defendant in a collection action solely on the basis of spousal status without

reviewing the relevant account information and credit card
charges underlying the debt.  Here, both Mrs. Paone and Mr.
Walter were added as defendants before the respective collection
files were referred to Mann Bracken.  (See Connell Loftus Dep.
Tr. 22:10-16, 33:5-11, Mar. 23, 2007.)  Therefore, the
standardized conduct of adding spousal co-defendants without
reviewing the credit account information underlying the debt
could qualify as an unlawful debt collection practice under the
FDCPA, and satisfies the minimum standard for establishing
typicality.  See McDonough v. Toys R Us, Inc., 638 F. Supp. 2d
461, 476 (E.D. Pa. 2009), interlocutory appeal denied, McDonough
v. Toys R Us Inc., et al., Case. No. 09-8059 (3d Cir. Sept. 3,
2009) (finding typicality where class members "complain[ed] of
identical misconduct based on the same legal theory").

        Defendants contend that because all co-defendant
spouses were added for valid reasons, i.e., bankruptcy, fraud,
guarantee, or the necessaries doctrine, these theories of
liability negate a finding of typicality.  Defendants' reliance
upon the various grounds for liability justifying the respective
debts is inapposite to the question of typicality.  The FDCPA is
designed to prevent undesirable debt collection practices
themselves and does not focus on the validity of the underlying
debt.  See Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th
Cir. 1982) ("The [FDCPA] is designed to protect consumers who

have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992) (internal citation omitted) (same); Mace v. Van Ru Credit Corp., 109 F.3d 338, 341, (7th Cir. 1997) (internal citation omitted); Clark v. Unifund CCR Partners, Civ. A. No. 07-0266, 2007 WL 1258113, at *2 (W.D. Pa. Apr. 30, 2007) (internal citation omitted). Therefore, even if the alleged basis for liability exists for the underlying debt, the fact that Defendants allegedly initiated collection suits without reviewing the proper factual basis warranting such liability constitutes standardized conduct that satisfies the typicality requirement. See Martsolf v. JBC Legal Group, P.C., Civ. A. No. 1:04-CV-1346, 2005 WL 331544, at *1 n.1 (M.D. Pa. Feb. 7, 2005) (finding that "the FDCPA targets debt collection practices, generally without regard to the circumstances of the underlying transaction from which the debt arose," such that where a defendant sent an identical collection letter to all plaintiffs the typicality requirement was satisfied regardless of whether the underlying debts were created in the same manner).

Furthermore, Defendants argument that the unique defense of acknowledgment of debt with respect to Mr. Walter precludes a finding of typicality is unavailing. In Beck v. Maximus, Inc., the Third Circuit considered whether the district court's failure to consider the defendant's asserted "bona fide

error defense"[11] defeated class certification under the FDCPA. 457 F.3d at 397-301.[12]  The Third Circuit held that "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  Id. at 301.  This standard is intended to "create the proper balance between protecting class members from a representative who is not focused on common concerns of the class, and protecting a class representative from a defendant seeking to disqualify the representative based on a speculative defense."  Id.

The court in Richberg v. Palisades Collection LLC, 247 F.R.D. 457, 463-64 (E.D. Pa. 2008), applied the Beck standard with respect to a dispute over whether the debtor's purported acknowledgment of the relevant debt served to toll the statute of limitations, and therefore, present a valid defense to a class

---

[11]    The bona fide error defense under the FDCPA is defined as follows:

> A debt collector may not be held liable in any action
> brought under this subchapter if the debt collector
> shows by a preponderance of evidence that the violation
> was not intentional and resulted from a bona fide error
> notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

[12]    The issue in Beck involved the parties' dispute as to whether the form of a collection notice as opposed to its method of transmission violated the FDCPA, which was central to the defendants' ability to establish the bona fide error defense. Id. at 297-98.

action brought pursuant to the FDCPA.  The court found that this defense of acknowledgment of debt was not available to the class as a whole.  Id. at 263.  The court examined the relevant deposition testimony as to whether the plaintiff actually agreed to pay an outstanding account balance, and concluded that a genuine dispute existed as to whether the acknowledgment defense was valid.  Id.  Therefore, the court held that this unique defense would be a significant issue addressed at trial, and refused to certify the named plaintiff as the class representative.  Id. at 263-64.

Here, Defendants argue that because Mr. Walter paid the outstanding debt sought in the Walter Complaint in the course of his mortgage refinancing, the affirmative defense of acknowledgment of debt is available to the Defendants, thus negating typicality.  First, this is a relatively minor issue that would not require a significant amount of time and resources to resolve, and therefore would not qualify as a "major focus" of the class action under Beck.  See McDonough, 638 F. Supp. 2d at 476-77 (finding that the affirmative defense of statute of limitations did not defeat typicality because it would not be a significant issue during trial that would distract the class representative's attention) (citing Linerboard, 203 F.R.D. at 211-12).  Second, Plaintiffs have not presented any argument that they will even contest the issue of whether Mr. Walter

acknowledged the debt by paying the outstanding amount in order to refinance his mortgage.  Since this issue may not need to be addressed at all in the instant action, it cannot constitute a significant issue under the standard set forth in <u>Beck</u>. Therefore, the requirement of typicality is satisfied.

d.    Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The following two-prong inquiry has been developed in the Third Circuit to assess the adequacy of a proposed class representative: (1) whether the proposed class counsel is sufficiently qualified to represent the class; and (2) whether there are "conflicts of interest between the named parties and the class they seek to represent."  <u>In re Prudential</u>, 148 F.3d at 312.

The "conflicts of interest" step in this adequacy of representation analysis is the substantial equivalent of the typicality analysis required under Rule 23(a)(3).  <u>See</u> <u>Beck</u>, 457 F.3d at 296 (noting that the "typicality and adequacy inquiries often 'tend[] to merge' because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" (quoting <u>Amchem</u>, 521 U.S. at 626 n.20)).  As discussed above, the Court

concludes that any distinctions between Plaintiffs' cases will not be central in the instant litigation and will not divert the named Plaintiffs' attention from the issues prevalent to the entire class. Thus, the "conflicts of interest" prong is satisfied.

The most critical inquiry in resolving the certification issue before the Court is the "adequacy of counsel" prong required under Rule 23(a)(4). No clearly defined standard exists to determine whether class counsel is qualified to represent the putative class, rather, the court is required to confirm that the proposed attorneys can "handle" the representation. See New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007); Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 128-29 (3d Cir. 1987), overruled in part on other grounds by Reed v. United Transp. Union, 488 U.S. 319 (1989) (noting that "the assurance of vigorous prosecution" by class counsel is a "significant factor" in the Rule 23(a)(4) analysis). This inquiry requires a court to determine whether the proposed class counsel is "'qualified, experienced, and generally able to conduct the proposed litigation.'" Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975) (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968)). This analysis encompasses careful scrutiny of the "character, competence and quality of counsel

retained." Kingsepp v. Wesleyan Univ., 142 F.R.D. 597, 599
(S.D.N.Y. 1992) (internal citation omitted). "In assessing the
adequacy of counsel, a court may examine class counsel's conduct
in both: (1) prior litigations, and (2) the putative class action
before the court." Id; Rahman v. Smith & Wollensky Rest. Group,
Inc., Civ. A. No. 06-6198, 2007 WL 1521117, at *8 (S.D.N.Y. May
24, 2007).

        The Court concludes that while proposed Plaintiffs'
counsel, Mr. Eisenberg and Ms. McCullough, are not per se
unqualified to act as counsel in a class action, under the
circumstances the Court cannot certify the proposed class based
upon their status as sole class counsel.  Although the Court
would not in the ordinary case undertake a careful review of
counsel's qualifications where counsel is freely retained by a
party for litigation, in the class action context, where counsel
is charged with representing the interests of absentee class
members, it is necessary and appropriate to delve into the
particular qualifications of Mr. Eisenberg and Ms. McCullough.
See In re Prudential, 148 F.3d at 312 (recognizing that the
inquiry mandated by Rule 23(a)(4) is "designed to protect the
interests of absentee class members"); Greenfield v. Villager
Indus., Inc., 483 F.2d 824, 832 (3d Cir. 1973) (noting that class
counsel maintains fiduciary obligations to absentee class
members); Marcus v. Kan. Dep't of Revenue, 206 F.R.D. 509, 512

(D. Kan. 2002) ("The adequacy of representation requirement is of particular importance because inadequate representation would infringe upon the due process rights of absentee class members who are bound by the final judgment of the suit.") (internal citation omitted).

A basic fact that informs the Court's inquiry is that Ms. McCullough is the daughter of Mr. Eisenberg, and that they are the only two attorneys in their firm. This fact makes it less likely that each attorney would act independent of the other.

With respect to Mr. Eisenberg, it must be noted that he was disbarred upon consent between 1990 and 1998 because of issues involving the application of client funds. Prior unethical conduct is a relevant consideration pursuant to certification under Rule 23(a)(4). See Hall v. Midland Group, No. Civ. A. 99-3108, 2000 WL 1725238, at *3 (E.D. Pa. Nov. 20, 2000); Bogner v. Masari Inves., LLC, 257 F.R.D. 529, 533 (D. Ariz. 2009) (examining prior ethical complaints against proposed class counsel in a FDCPA class action). Additionally in 2000, Judge DuBois found that Mr. Eisenberg engaged in the unlicensed practice of law while working as a paralegal for Ms. McCullough during the period of his disbarment. McCullough v. Chambers, Nos. 98-6344, 96-16524, 2000 WL 502827, at *6 (E.D. Pa. Apr. 25, 2000).

On the other hand, Mr. Eisenberg was approved as class counsel by Judge Waldman after his reinstatement to the bar in Hall v. Midland Group, 2000 WL 1725238, at *3.[13]

Mr. Eisenberg's record, however, has not been without ethical blemishes since he was certified as class counsel by Judge Waldman in 2000. In 2003, he was sanctioned by Bankruptcy Judge Sigmund in two separate bankruptcy cases and ordered to take a course on attorney ethics. In addition, Mr. Eisenberg received a "private remand" from the Disciplinary Board of the Supreme Court of Pennsylvania in 2005.

Ms. McCullough's ethical record does not raise the same number of red flags as that of Mr. Eisenberg, however, her participation in Mr. Eisenberg's apparent unlicensed practice of law (as found by Judge DuBois) gives cause for concern. Furthermore, Ms. McCullough has disclosed that in 2006, Bankruptcy Judge FitzSimon ordered her to disgorge $500.00 of fees received from a client and to take a continuing legal education course.

While, as previously stated, these ethical lapses ordinarily may not warrant disqualification and do not per se

---

[13] Hall did involve a consumer fraud class action, however, in that case, Judge Waldman certified the class in conjunction with the approval of a preliminary settlement agreement. Id. at *1. Here, no such settlement agreement exists, and the parties have indicated that this case will be litigated on the merits.

disqualify them from acting as counsel in a class action context, when viewed together, and under the circumstances of this case, they give the Court pause to authorize Plaintiffs' counsel to represent a substantial nationwide class.

Moreover, the resources available to Plaintiffs' counsel and their relative lack of experience also play a role in the Court's calculus.  Plaintiffs' counsel represented to the Court that the putative class could include potentially over 4,000 members.  Mr. Eisenberg and his daughter Ms. McCullough are the principals of a two-person firm.  The entire clerical staff available to them consists of two paralegals.  In fact, during oral argument, Mr. Eisenberg conceded that he had considered joining with another firm upon certification of the putative class.  Based upon these circumstances, Plaintiffs' counsel is ill-equipped to handle a class composed of thousands of plaintiffs nationwide.  See Young v. Magnequench Int'l, Inc., 188 F.R.D. 504, 508 (S.D. Ind. 1999) (plaintiff's counsel failed to adequately allege the resources available to devote to a consuming class action litigation); Fisher v. United States, 69 Fed. Cl. 193, 200-01 (2006) (plaintiff failed to present any evidence that his counsel had prior experience in class action litigation, and it was not clear that counsel had the resources necessary to litigate on behalf of a class that plaintiff believed could potentially encompass 250,000 members).

The Court's hesitancy in appointing Plaintiffs' counsel to represent the class in this case is strengthened by counsel's conduct in this litigation. It must be noted that the Court previously has admonished Plaintiffs' counsel for a "history of dilatoriness" in failing to prosecute this case promptly. (See Sept. 24, 2008 Hr'g Tr. 28:20-24.) More recently, Plaintiffs' counsel has failed to file the appropriate motion for substitution for Plaintiff Paone as required by Rule 25(a), despite having more than three months to do so. Succinctly put, the quality of advocacy by Plaintiffs' counsel thus far raises concerns as to whether counsel is up to the task of conducting this complex litigation.

Finally, the Court is concerned about counsel's lack of relative experience concerning recent class action litigation. Cf. In re Vicuron Pharms., Inc. Sec. Litig., 233 F.R.D. 421, 428 (E.D. Pa. 2006) (finding that class counsel was sufficiently qualified where they participated in several successful securities fraud class actions in various federal courts throughout the United States). Plaintiffs' counsel has pointed the Court to two class actions that they have handled in the Eastern District of Pennsylvania since 2000. However, these were companion cases in which national class action status was sought, but where the case was conditionally certified for a Pennsylvania only class and a settlement was reached prior to final

certification.[14]

The Court's decision is arrived at with a heavy heart. At all times, Plaintiffs' counsel has been gracious and polite with the Court. Both counsel appear eager to proceed with the case, should they be appointed by the Court. And, of course, nothing said here is intended to predict that counsel may not be up to the task of representing others, class action or not, in future litigation. Yet the Court is mindful that, by appointing counsel, it is requiring absentee class members, who did not engage Plaintiffs' counsel directly, to accept that Plaintiffs' counsel will faithfully, diligently, and skillfully represent these members' interests. Based on this record, the Court cannot do so. Therefore, the Court concludes that Plaintiffs' counsel do not qualify as adequate representation for the proposed class under Rule 23(a)(4).

> 2. Rule 23(b)(3) Predominance and Superiority Requirements.

As the Court has determined that Plaintiffs cannot satisfy the requirements of Rule 23(a), it is unnecessary to address the requirements of class certification under Rule 23(b).

---

[14] While counsel's relative lack of resources and experience could possibly be remedied by association with co-counsel, this association would not cure the Court's concerns about counsel's prior missteps in the area of professional responsibility.

**III. CONCLUSION**

In light of the fact that Plaintiffs' counsel has not demonstrated that they will adequately represent the putative class in conformity with Rule 23(a)(4), Plaintiffs' motion for class certification will be denied.[15]  An appropriate order will issue.

---

[15]    The Court is not determining that Plaintiffs' counsel cannot proceed with representation of the individual Plaintiffs in a non-class action context.