```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DOUGLAS C. WALTER, et al.,    :   CIVIL ACTION
                              :   NO. 06-378
        Plaintiffs,           :
                              :
     v.                       :
                              :
PALISADES COLLECTION,         :
LLC, et al.,                  :
                              :
        Defendants.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                MAY 2, 2011

## I.  INTRODUCTION

Plaintiffs Douglas C. Walter and Kathleen Paone[1] (collectively, "Plaintiffs"), brought this action on behalf of themselves and others similarly situated against Defendants Mann Bracken, LLP (as successor in interest to Wolpoff & Abramson, LLP) ("Mann Bracken") and Palisades Collection, LLC ("Palisades," and together with Mann Bracken, "Defendants"). Plaintiffs allege

---

[1] On September 23, 2009, Plaintiffs' counsel filed a "statement noting the death" of Kathleen Paone pursuant to Federal Rule of Civil Procedure 25. Pursuant to Rule 25(a)(1), a motion for substitution must be filed within 90 days of September 23, 2009. As the deadline to file such a motion had passed, all claims asserted on behalf of Kathleen Paone were dismissed on May 12, 2010.

that Defendants violated the federal Fair Debt Collection Practices Act ("FDCPA") and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") by indiscriminately and without legal basis adding non-liable spouses for the purpose of collection lawsuits.

Plaintiff, Mr. Walter, and Defendant Palisades have filed cross motions for summary judgment on Count I for alleged violations of the federal FDCPA and Count IV for alleged violations of the FCEUA. For the reasons set forth below, the Court will deny both motions.

## II. BACKGROUND

Palisades is in the business of purchasing defaulted debt from creditors. Palisades would refer certain of the defaulted debt accounts to Mann Bracken for collection purposes, and specifically to institute collection lawsuits on behalf of Palisades. In referring a case to Mann Bracken, Palisades would forward a collection file which generally included basic account information on the defaulted debt, such as the assigned date from the original creditor, the assigned amount calculated by the original creditor, the last payment recorded by the original creditor, the date of delinquency, as well as the debtor's name, address, phone number, and social security number. (See Joann Bergmann Dep. Tr. 55:21-56:7, June 28, 2007.)

In pursuit of collecting a debt, on December 27, 2005, Mann Bracken filed a lawsuit on behalf of Palisades against Jill Walter ("Mrs. Walter") and Douglas Walter ("Mr. Walter") in the Pennsylvania Court of Common Pleas of Bucks County, Pennsylvania (the "Walter Complaint"), seeking judgment against both Mr. and Mrs. Walter in the amount of $6,467.40, plus costs. (Pls.' Mot. for Class Cert., Ex. 3.)

Palisades was attempting to collect debt on Mrs. Walter's credit card account (the "Account") with Providian National Bank Visa ("Providian"), of which Mr. Walter was an authorized user. (Douglas Walter Dep. Tr. 56:11-59:14, Aug. 8, 2007.) Although Mr. Walter was an authorized user and was issued a credit card with his name on it, he never used the Walter Account credit card for any purchases and never filled out or signed a credit application. (Id. at 57:15-17.) The monthly statements on the Walter Account were in both Mr. and Mrs. Walter's names, and payments on the Walter Account were made from the joint account of Mr. and Mrs. Walter. (Id. at 54:5-57:14.) It was Mrs. Walter who incurred the credit card debt at issue in each collection action.

The Walter Complaint alleged, in relevant part that: defendant(s) was/were issued an open end credit card account; that at all relevant times material hereto, defendant(s) have/has used said credit card for the purchase of products, goods, and/or

obtaining services; and plaintiff provided defendant(s) with copies of the Statement of Accounts showing all debits and credits for transactions on the aforementioned credit card account to which there was no bona fide objection by Defendant(s). (Pls.' Am. Compl. Ex. 3.)

While the Walter Complaint was pending, Mr. Walter sought to refinance the mortgage on his residence. (Pls.' Mot. for Class Cert. 7.) The mortgage refinancing company required Mr. Walter to satisfy the $6,467.40 debt alleged in the Walter Complaint in order to consummate his mortgage refinancing. (Id.)

On January 27, 2006, Plaintiffs filed a complaint against multiple Defendants,[2] including Mann Bracken and Palisades. Plaintiffs subsequently amended this complaint and asserted three causes of action against Defendants: (1) a violation of the FDCPA, 15 U.S.C. § 1692 et seq.; (2) a RICO claim pursuant to 18 U.S.C. § 1961;[3] and (3) a violation of the Pennsylvania Fair Credit Extension Uniformity Act,[4] 73 Pa. C.S. §

---

[2] The additional defendants were as follows: Washington Mutual Credit Card Services; Great Seneca Financial Corp.; Household Bank HSBC Bank, USA; Wolpoff & Abramson, LLP; Amy F. Doyle; Daniel F. Wolfson; Phillip C. Warholic; Andrew C. Spears; David R. Galloway; Tonilyn M. Chippie; Bruce H. Cherkis; Ronald S. Canter; Ronald M. Abramson; and Donald P. Shiffer. These defendants were dismissed at various points in these proceedings.

[3] On March 29, 2007, the Court entered an Order (doc. no. 56) dismissing Plaintiffs' RICO claim in its entirety.

[4] While the original complaint alleged Defendants engaged in Unfair and Deceptive Trade Practices, Plaintiffs' Amended Complaint alleges, in Count IV, that these "unfair and deceptive

201-1 and 73 Pa. C.S. § 2270.4-5.[5]

The parties were permitted to conduct fact discovery with respect to class certification for a period of almost three years. On June 24, 2009, Plaintiffs filed a motion seeking class certification. On January 27, 2010, the Court entered an Order denying the motion for class certification, and on February 18, 2010, the Court denied Plaintiffs' motion for reconsideration.

On September 27, 2010, Plaintiff Walter filed a motion for summary judgment. On October 17, 2010, Defendant Palisades filed a cross motion for summary judgment. Both motions for summary judgment are currently before the Court.

**III. DISCUSSION**

Plaintiff, Mr. Walter, and Defendant Palisades have filed cross motions for summary judgment on Count I for alleged violations of the federal FDCPA and Count IV for alleged violations of the FCEUA.

---

trade practices" constitute a of the Pennsylvania Fair Credit Extension Uniformity Act. (See Plf.'s Comp.; Plf.'s Amen. Comp. ¶ 109.)

[5] Plaintiffs also asserted a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681, against Washington Mutual Credit Card Services only, a Defendant that has been dismissed.

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 250.

The summary judgment standard is "no different where there are cross-motions for summary judgment." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir. 1968)(citing F.A.R. Liquidating Corp. v. Brownell, 209 F.2d 375, 380 (3d Cir. 1954)); see also Lawrence, 527 F.3d at 310. "If any such issue exists it must be disposed of by a plenary trial and not on summary judgment." Id. Thus, where cross motions are pending, each shall be addressed separately by the Court.

B. Count I: Violation of the Fair Debt Collection Practices Act

Mr. Walter argues that he is entitled to judgment as a matter of law as to Count I because Palisades erroneously included him as a debtor on his wife's defaulted credit card account, causing Palisades' attorneys to falsely file a lawsuit against him. On the other hand, Palisades argues that Palisades is entitled to judgment as a matter of law as Palisades did not

violate the FDCPA because Mr. Walter was liable for his wife's debt under Pennsylvania's doctrine of necessaries. Alternatively, Palisades argues that even if Mr. Walter was not liable for the debt, Palisades' alleged FDCPA violation was an unintentional error such that Palisades is entitled to the bona fide error defense.[6]

### 1. The Fair Debt Collection Practices Act

The FDCPA was enacted by Congress in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA is a remedial statute, therefore, courts are instructed to construe its language broadly in order to effectuate its remedial purpose. Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted).

---

[6] Palisades also argues that Mr. Walter cannot claim that he was erroneously added as a debtor to his wife's account because Mr. Walter "acknowledged" the debt by paying off the debt when he refinanced his home mortgage for debt consolidation purposes. (See Def. Mot. Summ. J. 25-29.) While this evidence may be persuasive to a jury, it is not conclusive evidence, when viewing the facts in the light most favorable to Mr. Walter, that Mr. Walter was liable for the debt. (Id. at 29. (arguing that "if it were true that Mr. Walter never agreed to be responsible for the debt at issue on the subject credit card, then he would not have agreed to include the delinquent debt on the subject credit card as a liability to be satisfied at the time he refinanced his mortgage.").) Further, Mr. Walter alleges that he had to pay off the debt in order to be approved for the debt consolidation loan as the debt was indicated on his credit report, supporting a finding that there is an issue of material fact. (See Aff. Douglas Walter 1-2.)

The FDCPA explicitly prohibits: (1) the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f, and (2) the use of "false, deceptive, or misleading representation or means," 15 U.S.C. § 1692e, or "unfair or unconscionable means," 15 U.S.C. § 1692f, to collect or attempt to collect any debt.

The filing of a collection action against a non-liable spouse can qualify as a violation of the FDCPA insofar as this action is an attempt to collect an amount that is not authorized by agreement or permitted by law. See Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 803 (S.D. Ohio 2006) (holding that the practice of filing collection suits against spouses who were not jointly liable constitutes a violation of 15 U.S.C. § 1692e). Thus, courts look to state law to determine whether a spouse can be liable for his spouse's debt, as to permit the collection of the spouse's debt from him under the law. Id. The parties agree that Pennsylvania law applies in this case.

2. Under Pennsylvania Law, a Spouse Can be Liable for His or Her Spouse's Debt Pursuant to 23 Pa.C.S.A. § 4102

Defendants argue that Mr. Walter is liable for his wife's debt under the doctrine of necessaries. In Pennsylvania, this common law doctrine was adopted by the legislature via the Domestic Relations Act of 1990 which applies equally to both spouses. See generally Porter v. Karivalis, 718 A.2d 823 (Pa. Super. 1998). Specifically, the law provides that:

> In all cases where debts are contracted for necessaries by either spouse for the support and maintenance of the family, it shall be lawful for the creditor in this case to institute suit against the husband and wife for the price of such necessaries and, after obtaining a judgment, have an execution against the spouse contracting the debt alone; and, if no property of that spouse is found, execution may be levied upon and satisfied out of the separate property of the other spouse.

23 Pa.C.S.A. § 4102.

When it comes to expenses that qualify as necessaries, "absent a specific agreement by one spouse to solely accept responsibility for the debt to the exclusion of the other spouse, both are liable as expressed in the statute." Porter, A.2d at 827. Under the statute, a creditor can execute a judgment for a debt for necessaries first against the contracting spouse, and only if that spouse's property cannot satisfy the judgment, may the creditor seek to execute against the non-contracting spouse. 23 Pa.C.S.A. § 4102. Although the contracting spouse is primarily liable and the other is secondarily liable, a creditor

may initiate a lawsuit against both. See Porter, 718 A.2d at 825.

In this case, Defendants were permitted by law to bring an action against both Mrs. and Mr. Walter if Mrs. Walter's credit card debt qualified as expenses for "necessaries." "The scope of 'necessaries' for purposes of this provision is not restricted to what may be considered the bare essentials required to hold body and soul together." In re Olexa, 317 B.R. 290, 294 (Bkrtcy. W.D. Pa. 2004). "Things required for and 'suitable in light of the rank' and position of the spouses to maintain their lifestyle are also included." Id. (quoting Gimbel Brothers v. Pinto, 145 A.2d 865, 869 (Pa. Super. Ct. 1958)).

Necessaries include more than the basics of food, clothing, and shelter. See In re Reed's Estate, 4 Phila. 375, 1861 (including education expenses for children); Kanai v. Sowa, 167 A. 429 (Pa. Super. Ct. 1933) (citations omitted) (including funeral expenses for deceased spouse); United States v. O'Neill, 478 F. Supp. 852 (E.D. Pa. 1979)(including legal expenses for services that are required at public expense). Necessaries can include luxury items in the unusual circumstance that they are justified by the parties' station in life. See Gimbel Brothers, 145 A.2d at 865 (including a fur coat where the husband was the president of a corporation). However, necessaries do not include entirely personal expenses. Linsenberg v. Fairman, 208 A.2d 6

(Pa. Super. 1965) (excluding personal legal services).

"The 'kind and amount' of such necessaries is to be determined on a case-by-case basis by considering the 'means, ability, social position and circumstances' of both spouses." Id. Additionally, "[t]he pecuniary circumstances of the non-contracting spouse may be relevant when considering whether an item contracted for by the other spouse qualifies as a 'necessary' for purposes of 23 Pa.C.S.A. § 4102." In re Olexa, 317 B.R. at 294; see also Gimbel Brothers, 145 A.2d at 869 (citing Breinig v. Meitzler, 23 Pa. 156 (Pa. 1854)).

Palisades argues that "in order to purs[u]e a claim under the FDCPA, Plaintiff must concede that the debt at issue is a financial obligation arising from the purchase of items for personal, family or household purposes." (Def.'s Mot. Summ. J. 9.) Thus, Palisades argues that any debt that qualifies under the definition of "debt" under the FDCPA, is de facto debt that qualifies as expenses for necessaries. However, the Court cannot agree.

The FDCPA defines debt as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C.A. § 1692a(5)(emphasis added).

While it may be true that financial transactions for

primarily family or household purposes would qualify as "necessaries," transactions for personal purposes may not. See e.g., Linsenberg, 208 A.2d at 6. Indeed, Mr. Walter contends that Mrs. Walter's credit card was for her personal expenses. (Walter Dep. Tr. 52:12-24.) Thus, simply because a claim is brought under the FDCPA does not mean that the debt in question qualifies as for necessaries under Pennsylvania law.

Palisades further argues that Palisades always makes the factual and legal determination that is required to determine whether or not a spouse was liable for his or her spouse's debt under 23 Pa.C.S.A. § 4102, and offers the presumption that Palisades made this determination in Walter action. Palisades points out that the Director of Legal Compliance at the Law Firm of Wolpoff & Abramson, Palisades' attorneys in the Walter Action, states in his deposition that the determination of whether to add a spouse to the lawsuit is made "based upon the facts and circumstances of the case. . . . and statutory and case law prevailing in that jurisdiction." (Ronald Canter Dep. Trans. p.52-53.)

However, Defendants do not point to the information they used to make the determination in this case to add Mr. Walter. That is because Palisades did not have copies of purchases, receipts, or any documents indicating what the debt was for. (See Bergmann Dep. Tr. 57:12-20; see also Connell

Loftus Dep. Tr. 27:20-29:8, 30:1-32:4, 55:17-56:18 (showing that Palisades' attorneys were not given this information before filing suit against both Mrs. Walter and Mr. Walter).) Additionally, when Palisades' Vice President for Legal was asked whether Palisades tries to determine if a spouse is a signatory or an authorized user, neither or both, she responded "I don't know." (Bergmann Dep. Tr. 58:24-59:16, 62:19-21.) Thus, Palisades could not have made this individual determination on the Walter account because it did not have the required information to do so.

As set forth above, the determination of whether an expense qualifies as a "necessary" so that a non-contracting spouse is liable requires an analysis of what products or services were purchased. Although Palisades argues that they made an individualized assessment of each file before adding a spouse, this determination is not possible without examining what the charges on the account were for.

Palisades also argues that Mr. Walter was identified as a co-debtor in the information provided to Palisades by Providian National Bank, the original owner of the debt. (Def. Mot. Summ. J.) To support this, Palisades offers a computer printout that has Mrs. Walter as debtor number one, Mr. Walter as debtor number two, their shared address, no work address, and one social security number. (Id. at Ex. B 9.) However, the printout does

not have any information indicating what system it was printed from, does not include a work address for Mr. Walter even though he was employed, and contains only one social security number. Additionally, Palisades' records on the account show that Palisades' employees had been continuing to contact Mrs. Walter regarding the debt and noted that her husband (not co-debtor) was employed. (Bergmann Dep. Ex. P-3.)

While a reasonable jury could agree with Palisades, a reasonable jury could also draw an inference that Palisades was aware that Mr. Walter was not a co-debtor, contradicting Palisades' assertion that it received the faulty information from Providian. As such, neither Palisades nor Mr. Walter have shown that there is no issue of material fact. Thus, Mr. Walter's motion for summary judgment will be denied as to Count I. Palisades' motion for summary judgment will also be denied as to Count I unless Palisades can show that it is entitled to protection under the bona fide error defense.

### 3. Bona Fide Error Defense

Palisades argues that it is entitled to summary judgment because it cannot be held liable based on the bona fide error defense. (Def.'s Mot. Summ. J. 15.) "To qualify for the bona fide error defense under the Fair Debt Collection Practices Act, a defendant's alleged violation of the Act must have been

'unintentional' and must have 'resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.'" Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006)(quoting 15 U.S.C. § 1692k(c)).[7]

Accordingly, "to avail itself of the defense,[a Defendant] will have to establish: (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." Beck v. Maximus, Inc., 457 F.3d at 297-98 (citing Johnson v. Riddle, 443 F.3d 723, 727-28 (10th Cir. 2006); Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 537 (7th Cir. 2005)).

Further, the bona fide error defense does not apply to a mistake of law. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605 (2010). Thus, the defense does not protect a debt collector from liability where the debt collector held an incorrect interpretation of the legal requirements of the Act. Id.

---

[7] As to the bona fide error defense, the FDCPA states:

> A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error not withstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

In this case, the alleged violation is adding Mr. Walter as a debtor for debt collection purposes. For the bona fide error defense to apply, Palisades would first have to show that the violation was unintentional. That is, that Palisades did not intend to add Mr. Walter as a debtor for debt collection purposes knowing that this was not allowed.[8] Palisades' records on the account show that Palisades' employees had been contacting Mrs. Walter regarding the debt and noted that her husband (not co-debtor) was employed. (Bergman Dep. Ex. P-3.) There is also evidence that Mr. Walter owned the family residence. (Plf.'s Mot. Summ. J. Ex. A-3.) The question of intent, is a question best to be answered by a jury, as a reasonable jury could draw the inference that Palisades included Mr. Walter, knowing he was not a co-debtor, because he was more likely to have the ability to pay.

Second, Palisades would have to show that Mr. Walter was added due to a bona fide error. Palisades does not make clear that it is arguing that it did not intend to add Mr. Walter as a debtor and that his name was mistakenly added via a technical, transcription, or programming error. This mistake

---

[8] Palisades also argues that the violation is due to the bona fide mistake of using faulty information provided by Providian. However, as determined previously, it is a jury question whether Providian provided misinformation to Palisades regarding the Walter account. Thus, analysis of the bona fide error defense under this theory is inappropriate at the summary judgment phase and will also be a question for the jury.

that may qualify as a bona fide error, but no evidence was produced in the record to support this type of error.

On the other hand, if Palisades is arguing that Mr. Walter was added because Palisades and its employees mistakenly believed that a spouse is liable for the debt of another spouse regardless of what the expenses were for, Palisades is not shielded from liability because this error is a mistake of law to which the bona fide error defense does not apply.

Third, Palisades would have to show that the error occurred despite procedures designed to avoid such errors. Palisades argues that it had sufficient procedures to avoid the alleged error of adding a non-liable spouse as a co-debtor to a lawsuit. Palisades points to deposition testimony to show that Palisades' procedure is to do individualized assessments of an account based on the law of the jurisdiction before adding non-liable parties. (See also Canter Dep. Tr. p.52-53.) However, as noted earlier, Palisades did not have the information necessary to make this determination in the Walter action. (See Bergmann Dep. Tr. 57:12-20.) It was also not typical procedure for Palisades to have this information. (Id. at 58:1-15 (stating that Palisades "sometimes" gets information regarding the charges made on the account).)

Thus, a reasonable jury could find that Palisades is not entitled to the bona fide error defense and Palisades' motion

for summary judgment as to Count I will be denied.

    C.    <u>Count IV: Pennsylvania Fair Credit Extension Uniformity Act</u>

Pennsylvania's FCEUA is the corollary to the FDCPA, providing that a violation of the FDCPA is also a violation of Pennsylvania's FCEUA. 73 P.S. § 2270.4(a)(b). Specifically, the FCEUA states that "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 P.S. § 2270.4(a).

As such, if a party raises a genuine issue of material fact as to a FDCPA claim, a motion for summary judgment as to Plaintiff's FCEUA claim should be denied. <u>See</u> <u>e.g.</u>, <u>Fetters v. Paragon Way, Inc.</u>, Civ. No. 10-904, 2010 U.S. Dist. LEXIS 132773 (M.D. Pa. Dec. 15, 2010); <u>Desmond v. Phillips & Cohen Assocs.</u>, 724 F. Supp. 2d 562 (W.D. Pa. 2010); <u>Yelin v. Swartz</u>, Civ. No. 11-089, 2011 U.S. Dist. LEXIS 31154 (E.D. Pa. March 24, 2011).

Thus, as Palisades' motion for summary judgment will be denied as to the FDCPA claim, Palisades' motion for summary judgment will be denied as to Count IV. Likewise, as Plaintiff is not entitled to judgment as a matter of law as to his FDCPA claim, Plaintiff's motion for summary judgment as to Count IV will also be denied.

**IV. CONCLUSION**

For the reasons stated above, Defendant Palisades' Motion for Summary Judgment and Plaintiff Walter's Motion for Summary Judgment will both be denied. An appropriate Order will follow.